NOT FOR PUBLICATION                           [Docket Nos. 18, 21]

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

|  |  |
|---|---|
| LISA PAPOTTO,<br><br>        Plaintiff,<br><br>  v.<br><br>HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY,<br><br>        Defendant. | Civil No. 10-4722 RMB/AMD<br><br>**OPINION** |

Benjamin Goldstein
Drinkwater & Goldstein
277 White Horse Pike, Suite 200
Atco, NJ 08004

    Attorneys for Plaintiff

Maria A. Feeley
Pepper Hamilton LLP
301 Carnegie Center, Suite 400
Princeton, NJ 08543-5276

Brian P. Downey
Pepper Hamilton LLP
100 Market Street
P.O. Box 1181, Suite 200
Harrisburg, PA 17108-1181

    Attorneys for Defendant

    **BUMB**, United States District Judge:

1

Plaintiff is the widow of Frank Papotto Jr ("Mr. Papotto") She claims that, under the Employee Retirement Income Security Act of 1974 ("ERISA"), the Defendant wrongfully denied accidental death and dismemberment ("AD&D") benefits owed to her as the result of her husband's death. Both parties have moved for summary judgment. For the reasons that follow, both motions are DENIED and the case is REMANDED to the claim administrator for further evaluation consistent with the Court's opinion.

I.  Background

Mr. Papotto was employed by TD Banknorth and participated in an ERISA-qualified group benefit plan, which provided Mr. Pappoto with an AD&D policy (the "Policy"). The Policy gave Defendant "full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of The Policy." The Policy excluded from its coverage "any loss caused or contributed to by . . . Injury sustained while intoxicated." The Policy defines intoxicated as when "blood alcohol content" or "the result of other means of testing blood alcohol level . . . meet or exceed the legal presumption of intoxication, or under the influence, under the law of the state where the accident occurred."

On August 7, 2009, after playing golf and consuming alcohol in Willingboro, New Jersey, Mr. Papotto fell out of a golf cart while reaching for a cell phone he had dropped, struck his head,

and died five hours later.  A subsequent toxicology report, conducted on August 12, 2009, showed Mr. Papotto as having a blood alcohol level of .115 grams per decileter.

Following Mr. Papotto's death, Plaintiff, Mr. Papotto's beneficiary under the Policy, filed a claim under the Policy. That claim was denied by Defendant based on its exclusion of injuries that occur while intoxicated and Mr. Papotto's blood alcohol level exceeding New Jersey's standard for driving while intoxicated: 0.08 grams per decileter.

At the time of the denial, Plaintiff was advised that she had the right to appeal the decision and was asked to submit any information to Defendant that would assist Defendant in evaluating the claim.  Plaintiff appealed on three bases: (1) that the New Jersey standard for intoxication was inapplicable because Mr. Papotto was not operating a motor vehicle at the time of his death; (2) Defendant could not rely on the toxicology report to establish intoxication at the <u>time</u> of the accident without an expert opinion; and (3) that the Policy's intoxication exclusion must be read to include a causation requirement, such that the intoxication must play a role in causing the injuries at issue.  Defendant affirmed its decision. Plaintiff instituted this proceeding to challenge the decision.

II.  <u>Standard</u>

Summary judgment should only be granted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). "An issue is genuine only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party, and a factual dispute is material only if it might affect the outcome of the suit under governing law." Mollo v. Passaic Valley Sewerage Commissioners, 406 F. App'x 664, (3d Cir. 2011)(quotation and citation omitted). Here, there appears to be no facts in dispute. Instead, the parties dispute the propriety of Defendant's construction of the Policy.

Because the benefit plan at issue granted the plan administrator full discretion and authority to determine eligibility for benefits and construe the terms of the plan, this Court reviews the administrator's constructions under an arbitrary and capricious standard. Smathers v. Multi-Tool, Inc., 298 F.3d 191, 194 (3d Cir. 2002). However, because Defendant has, as both the administrator and payer of any claims, a structural conflict of interest, that conflict is considered a factor in the Court's review of the administrator's decision. Id. at 197.

If "a court finds that an administrator has acted arbitrarily and capriciously in denying a claim for benefits, the court can either remand the case to the

4

administrator for a renewed evaluation of the claimant's case, or it can award a retroactive reinstatement of benefits." Kaelin, M.D. v. Tenet Employee Benefit Plan, No. 04-2871, 2006 WL 2382005, at *3 (E.D.Pa. Aug. 16, 2006)(quotation and citation omitted).  Remand is the appropriate remedy where "the plan administrator has misconstrued the Plan and applied an incorrect standard to a benefits determination." Id. at 4 (quotation and citation omitted).

III. Analysis

In this action, Plaintiff renews the same three arguments she raised in her appeal of Defendant's initial denial of benefits.  On all three claims, the Court subjects the administrator's interpretation to a heightened abuse of discretion standard in light of the Defendant's conflict of interest.  Smathers, 298 F.3d at 199 (applying a "somewhat heightened" arbitrary and capricious review, in light of the real, but "not extraordinary," conflict of interest).

    A.   The Administrator's Reliance On The New Jersey DWI Statute Was Reasonable.

The Court rejects Plaintiff's first argument.  It was reasonable, not arbitrary and capricious, in light of the language of the Policy and the fact that the accident at issue occurred in New Jersey, for the administrator to look to a New

5

Jersey statute for driving while intoxicated to measure whether Mr. Papotto met or exceeded "the legal presumption of intoxication, or under the influence, under the law of the state where the accident occurred." Graham v. W. Kentucky Navigation, Inc., No. 99-5708, 2000 WL 1234319, at *3 (6th Cir. Aug. 23 2000)(rejecting a similar argument). Because a reasonable interpretation is sufficient under the deferential standard of review applicable here, the Court will not disturb Defendant's decision on this basis. Bauer v. Reliance Sd. Life Ins. Co., 421 F. App'x 226, 227 (3d Cir. 2011)(holding that, where the administrator's interpretation of the plan was reasonable, it should not be disturbed).

>    B.   The Administrator's Reliance On The Toxicology Report, Without An Expert Opinion, Was Reasonable.

The Court also rejects Plaintiff's second argument. It is generally reasonable for an administrator to rely on a toxicology report to establish intoxication. See Bickel v. Sunbelt Rentals, Inc., No. 09-2735, 2010 WL 3938348, at *1 (D.Md. Oct. 6, 2010). And Plaintiff submitted no evidence to the administrator suggesting that it would be unreasonable to conclude that the report, though based on a sample collected several days after Mr. Papotto's death, could reliably establish intoxication at the time of the injury.

Because this Court's review of an administrator's decision is limited to the information placed before the arbitrator (Smathers, 298 F.3d at 199-200) and there was no information before the arbitrator suggesting that it would be unreasonable to rely on the toxicology report, this Court finds that the administrator's reliance on the toxicology report was reasonable.

    C.    The Administrator's Interpretation Of The Intoxication Exclusion Was Unreasonable.

The parties have centered their analysis, with respect to the administrator's construction of the exclusion at issue, on the New Jersey Supreme Court's decision in Aviation Charters, Inc. v. Avemco Ins. Co., 784 A.2d 712 (N.J. 2001). Presumably they are under the impression that New Jersey law applies to the interpretation of the Policy. It does not. This Court applies federal common law in its interpretation of ERISA benefit plan provisions. Nally v. Life Ins. Co. of N. Am., 299 F. App'x 125, 128 n.2 (3d Cir. 2008)("[F]ederal common law-not state law-governs the interpretation of a benefit plan in an ERISA suit."). That law is "informed both by general principles of contract law and by ERISA's purposes as manifested in its specific provisions." Feifer v. Prudential Ins. Co. of Am., 306 F.3d 1202, 1210 (2d Cir. 2002). Because the Third Circuit has not yet addressed this issue, this Court is guided both by other

courts' interpretations of similar exclusions generally, as well as in the specific ERISA context.

Courts are divided generally on whether it is appropriate to impose a causation requirement in an intoxication insurance exclusion that is status based and does not, on its face, require causation.  Compare Bishop v. Nat'l Health Ins. Co., 344 F.3d 305, 310 (2d Cir. 2003)(refusing to read in causation in intoxication exclusion under Connecticut law, though noting that the plaintiff had, in any event, admitted that the injured party's intoxication had contributed to his injury); Sobczak v. JC Penny Life Ins. Co., No. Civ. A. 96-3924, 1997 WL 83749, at *3 (E.D.Pa. Feb. 18, 1997)(applying a similar exclusion, without evidence of causation, but without addressing any argument that causation was an implied requirement); Brown v. J.C. Penny Life Ins. Co., 861 S.W.2d 834, 837 (Tenn.App. 1992)(rejecting implying a causation requirement to a status based intoxication exclusion); Jefferson Pilot Life Ins. Co. v. Clark, 202 Ga.App. 385, 387 (Ga.App. 1992)(rejecting an implied causation requirement in a status based intoxication exclusion for operating motor vehicles); with Hastie v. J.C. Penny Life Ins. Co., 115 F.3d 895, 897 (11th Cir. 1997)(implying a causation requirement into a status based intoxication exclusion under Florida law); Chmiel v. JC Penney Life Ins. Co., 158 F.3d 966, 969 (7th Cir. 1998)(noting that "[i]t is reasonable to suggest

8

that where no conceivable causal connection exists between the decedent's blood-alcohol level and his death, the exclusion should not be enforced.  Reading such an implied term into a contract is nothing new."); Highlands Ins. Co. v. Koetje, 651 F. Supp. 346, 349-50 (W.D.Wash. 1987)(discussing Riordan v. Commercial Travelers Mutual Ins. Co., 11 Wash.App. 707, 525 P.2d 804, which found the same); Freeman v. Crown Life Ins. Co., 580 S.W.2d 897, 901 (Tex.App. 1979)(holding the same under Texas law).

Courts have also disagreed, in the specific ERISA context, on whether an administrator's interpretation of such an exclusion, which does not impose a causation requirement, is reasonable.  Compare Graham, 2000 WL 1234319, at *2-3 (upholding administrator's application of exclusion based on intoxicated status); Bickel, 2010 WL 3938348, at *4 (finding that administrator's interpretation of exclusion based on intoxicated status was reasonable and that no causation requirement was necessary, though noting that causation was established there regardless); The Canada Life Assurance Co. v. Piercy, No. Civ. A 00-0373, 2000 WL 1566535, at *4 (S.D.Ala. Sept. 29, 2000)(finding the same, guided by Alabama law, in the context of a driving while intoxicated exclusion) with Jenkins v. Montgomery Indus., Inc., 77 F.3d 740, 744 (4th Cir. 1996)(affirming the District Court's finding that the

administrator improperly failed to read in a causation requirement into a status based intoxication exclusion).

This Court agrees with the reasoning of those Courts that have found it proper to imply a causation requirement to a status based intoxication exclusion and therefore finds, particularly in light of the Defendant's inherent conflict of interest, that the administrator's interpretation was unreasonable. The unreasonableness of Defendant's interpretation is best demonstrated by the following hypothetical: under Defendant's interpretation, an intoxicated individual fatally struck by lightning while safely relaxing in the comfort of his home would be denied coverage. This cannot be. Hastie, 115 F.3d at 897 ("Language in contracts, drawn by reasonable men, should not be given an unreasonable construction.").

Nor is Defendant's interpretation consistent with the reasonable expectations doctrine, a doctrine applicable to interpretation of ERISA-governed insurance contracts, and which may apply even where, like here, those expectations are inconsistent with the policy's express language.[1]  Saltarelli v.

---

[1] The Third Circuit has held that application of the reasonable expectations doctrine "would require as a predicate fact that the contract be ambiguous." Early v. U.S. Life Ins. Co. in the City of New York, No. 05-4696, 2007 WL 852363, at *2 (3d Cir. March 22, 2007)(citing Pirkheim v. First Unum Life Ins., 229 F.3d 1008, 1011 (10th Cir. 200) in support of this proposition). That holding does not conflict with the rule that the insured's reasonable expectations can trump the express language of the policy. Rather, it is properly viewed as an admonition that it would be

Bob Baker Group Med. Trust, 35 F.3d 382 at 386 (9th Cir. 1994)(adopting the reasonable expectations doctrine in the ERISA context); Tran v. Metropolitan Life Ins. Co., 408 F.3d 130, 136 (3d Cir. 2005)(recognizing that "in certain situations the insured's reasonable expectations will be allowed to defeat the express language of an insurance policy.")(quotation and citation omitted).  That doctrine "protect[s] the reasonable expectations of applicants, insured, and intended beneficiaries regarding the coverage afforded by insurance carriers even though a careful examination of the policy provisions indicates that such expectations are contrary to the expressed intention of the insurer." Saltarelli, 35 F.3d at 386 (citation omitted). "[A]n insurer wishing to avoid liability on a policy purporting to give general or comprehensive coverage must make exclusionary clauses conspicuous, plain, and clear, placing them in such a fashion as to make obvious their relationship to other policy terms, and must bring such provisions to the attention of the insured." Id. (citation omitted).

It was the insurer's burden, and it failed, to make obvious the scope of the intoxication exclusion, so that the insured

---

unreasonable for the insured to have expectations contrary to the express terms of the policy where those terms are made obvious, plain, and unambiguous to the insured. See Pirkheim, 229 F.3d at 1011 (restating the rule that the insured's reasonable expectations may be contrary to the express terms of the policy but noting that application of the reasonable expectations doctrine is improper "[w]here the . . . exclusionary provision is conspicuous, clear, and unequivocal"). That is not the case here.

would reasonably expect the intoxication exclusion to be status based. Instead, the insured would reasonably expect that the provision is causation based for two reasons. First, the provision's phrasing, which links exclusions to loss "caused or contributed to by" various events, would prompt a causal nexus focus in the insured's mind. Second, as a general matter, but particularly because of that prompting, the insured is likely to interpret the provision in light of its own expectations of what risk the insurer intends to protect against and make the same assumption. It would reasonably view the exclusion of injuries that are coincident with, but not the result of, generally higher risk activities as arbitrary and therefore outside the contemplation of the insurer.[2] It would instead view the exclusion as the insurer's reasonable mechanism to protect the insurer against injuries <u>resulting from</u> higher risk activities. <u>Highlands</u>, 651 F. Supp. at 349 (discussing <u>Riordan's</u> finding that that a similar status based intoxication exclusion clause would be regarded by an average man as "an arbitrary provision" and that, to avoid that result, would be viewed by the average man as designed "to protect the insurer if the insured chooses

---

[2] The insured is likely to see little point in insuring against random accidents that simply happen to occur while an insured is intoxicated. The Court notes that, because of the difficulty and/or cost of demonstrating a causal link between injuries and intoxication, and the high probability that there is such a link, the provision might, in fact, be a reasonable attempt by the insured to disclaim this extra burden. It would, however, be unreasonable to expect the insured to be aware of this potential consideration.

to engage in proscribed high risk conduct and injures himself because of the greater risk.").

This conclusion is also supported by the ease with which Defendant could have written the policy to ensure that there was no confusion on the scope of the exclusion. Defendant's burden to make clear the scope of the exclusion could have been readily satisfied with plain language indicating that the intoxication exclusion operates regardless of whether the insured's intoxication played a role or caused the injury. The Policy lacked such language. It is unlikely that the insured, with the appropriate language, would agree to such a policy. That such plain language was <u>not</u> included here, despite the ease of doing so and the frequency with which this issue is litigated, supports this Court's analysis of the insured's reasonable expectations.

To the extent other courts have affirmed Defendant's interpretation of substantively identical provisions, this Court disagrees and declines to follow such cases. The provision at issue here is, however, distinguishable from driving while intoxicated exclusions that courts have upheld. In those exclusions, the linkage between the risk of driving while intoxicated is far more obvious than the general risk of intoxication. The provision here is also distinguishable from

the provision at issue in Aviation Charters[3]. In that case, the contours of the specific exclusion at issue were specifically negotiated, precluding any argument by the insured that there was a lack of notice, or that the terms were contrary to its reasonable expectations. 784 A.2d at 79 ("The Court's focus . . . on the expectation of the parties when the policy was written has no application to the present issue before us."). There is no evidence of any such negotiation here. Moreover, the provision there operated to exclude a whole class of higher-risk individuals from coverage, rather than exclude potentially higher-risk behavior from coverage. Id. at 78-79. The former is a more obvious exclusion, and less likely to cause an insured to assume a causation requirement, than the latter.

Having determined that the Defendant's interpretation would upset the reasonable expectations of the insured, the Court considers, as it is required, whether there is any conflict between a rule requiring a causal link and ERISA. There is none. Jenkins, 77 F.3d at 745. In light of these findings, and considering the heightened review applicable here, this Court finds that the administrator's decision was unreasonable and that it should have read into the Policy a causation requirement.

---

[3] The Court makes special note of the case because of the parties' emphasis on it and because it serves as a useful contrast to the provision at issue, not because it has any greater or lesser weight on this Court's decision.

IV.  Conclusion

     Because the Court concludes that the administrator applied an unreasonable and incorrect construction of the Policy, the parties' summary judgment motions are DENIED, and this Court REMANDS the case to the administrator for further evaluation consistent with this Opinion.  On remand, because it is the insurer's responsibility to show facts that bring a loss within an exclusionary clause, Defendant will bear the burden of demonstrating that intoxication caused Mr. Papotto's injury. Smathers, 298 F.3d at 200 (holding, in the context of an intoxication exclusion provision with a causation requirement, that it was the insurer's burden to demonstrate facts that bring a loss within an exclusionary clause).

     The administrator's decision as to whether intoxication caused Mr. Papotto's injury will necessarily implicate whether Mr. Papotto was, in fact, intoxicated at the time of his injury and, if so, the level of his intoxication. Therefore, while it was appropriate for the administrator to rely on the toxicology report on the facts previously before it, Plaintiff is free to submit new evidence, if she desires, in support of her contention that it was inappropriate to rely on the toxicology report or that Mr. Papotto was not legally intoxicated at the time of his injury.  See Cornish v. U.S. Life Ins. Co. of City of New York, No. 3:06CV-344-DW, 2009 WL 3231351, at *13 (W.D.Ky.

Sept. 30, 2009)(noting that the court had been presented with scholarly literature suggesting that blood alcohol content could significantly rise post-mortem); American Dredging Co. v. Lambert, 153 F.3d 1292, 1296 (11th Cir. 1998)(noting that a party had presented evidence that blood alcohol content could rise post-mortem).

    An appropriate order will follow this Opinion.

Dated: December 30, 2011        s/Renée Marie Bumb
                                      RENÉE MARIE BUMB
                                      United States District Judge